May it please the Court. My name is Roger Scott of the law firm Greenberg Traurig, appearing on behalf of Appellant Jeffrey DeHaven in this matter. I'd like to reserve two minutes for rebuttal. I want to focus on what differentiates this case from any of the existing Federal Rule of Civil Procedure 68 case law. And that's that in this case, the District Court is not correcting an error by the Court itself, but is attempting to correct an error that was made by the Appellee Tattersalls. There is no dispute that the District Court intended to award depreciation damages, provided the Tattersalls submitted appropriate evidence, either in the form of a sale price of the horse, Singapore Lily, or expert testimony by a deadline specifically set in the original September 30th order, which was November 21st, 2011. There's also no dispute that Tattersalls failed to meet that November 21st, 2011 deadline, and instead asked for additional time. Thus, the error the District Court purported to correct through the amended judgment was Tattersalls' failure to follow the District Court's explicit instructions to submit evidence in a timely fashion. Well, by your theory, though, the asking for additional time seems irrelevant, because they were already belonging beyond the predictable time period, weren't they? They were, and that was a substantive legal error by the Court. And a substantive legal error cannot be corrected under 60A. It can only be corrected by the Court. So your effort to focus on Tattersalls' failure to make it by, what was it, November 18th? How is that really relevant? You say even if they'd done it by November 18th, it would have been too late. So how does asking for an extension and obtaining it from the Court make such a situation any different? That's not our argument, and that's actually not the situation that we're presented with here. If we were presented with a situation where Tattersalls had timely submitted evidence and the appellant then objected and said, oh, well, there was a timing error and they submitted it late despite following the Court's instructions, I think we'd be in a very different situation. But that situation is hypothetical here today and is not the situation we're faced with. What we're faced with is Tattersalls seeing an explicit court order that required and stated under Rule 59E that they submit evidence by a specific date. That shows a reflection of the district court's understanding that the amendment to be made was substantive in nature. It required Tattersalls to submit additional substantive evidence that was not present at the Court, before the Court at the time of the default judgment. So that's a substantive amendment in nature that has to be done under 59E. So are you saying that if Tattersalls had made the submission prior to November 21st, that would have been okay, but because it filed a motion to extend that period on November 18th, that was what was wrong? That period could not be extended. That's what you're saying? We believe that under Rule 6 and under Rule 59, the deadline should not have been extended. However... But it could. Did the district court have the discretion once the motion is made on November 18th, three days before the expiration date, to go ahead and say, okay, you can have more time? No. The district court did not have that discretion. Under Rule 6 and Rule 59, it cannot be extended. But the error here, if there was any error at all, actually benefited Tattersalls. Tattersalls should not be able to benefit from an existing court error of saying, well, the Court believed that it could extend the deadline under Rule 59E when it actually could not, which, again, is a legal error and not a mere clerical one, and then be able to get more time because the district court came back and said, well, I meant to set it earlier. There is simply no reason to believe, and there was no evidence presented at the district court or in the appellant's brief, that if the time had been set at the 28 days, that Tattersalls somehow could have met an earlier deadline when it failed to meet a later one. Oh, it would have been easy. They could have asked the court not to make it a final judgment, to specifically stop the clock from ticking. I mean, the whole problem started because the court entered a judgment that really wasn't intended to be final, and that started the clock ticking. The court could have pulled that back easily. The court could have pulled that back easily, and Tattersalls could have asked for that, but they didn't. So I guess I'm still floundering on the distinction you're drawing. You say it would have been okay. And I understand, I mean, tactically, you don't want us to say because the district court misunderstood or miscalculated, the party loses out. But it just seems to me this is a refinement that says because instead of coming in with evidence, they came in with a request for more time, that makes it much worse. I don't see how coming in and asking for more time makes it so much worse. Either the court's original error condemns plaintiff to its fate, or it doesn't. What does asking for more time have to do with anything? Well, what asking for more time has to do with it is Tattersalls understood that the ruling was supposed to be under 59E, which sets a specific time frame. And that time had already passed. Even though the district court had set a later date. That's the mistake, isn't it? No, that's not the mistake. I don't truly believe that that's a mistake. And even if we focus on that as the specific mistake, again, we go back to the idea that that's a legal mistake. That's a mistake in legal reasoning. That's not a, quote, blunder in execution. That's the court looking at the situation and making a decision not to, as you say, enter a final judgment at that time. The court's September 30th order that accompanied the default judgment was very specific and well-reasoned, and went out of its way to explain exactly why it was doing what it was doing, and stating that Tattersalls had failed to enter evidence at the time of default judgment. No, but procedurally, what the court was trying to do, it wanted to get the horse back as soon as possible, because it's a wasting asset, potentially. So it wanted the horse back. And then it figured, we'll worry about the number later. That's clearly what the court had in mind, isn't it? The horse was already back. The horse had been seized by the San Diego Sheriff's Department. That's not back, because it can't. At least the court thought it couldn't be sold while it was being held in custody pendently. Okay? So the court wanted to do something to get the horse, if you don't mind the expression, liquidated. So, and, Arthur, you can't refuse. That's right. That's right. So that's what the court was trying to do, to, like, have the damages accrued so it could figure out what they were. Isn't that clear? And isn't all we're talking about is the court used the wrong procedure to get that done? I don't think the court used the wrong procedure to get that done, because the proper procedure was a motion to amend under Rule 59e. If the court had chosen not to enter a final judgment at that time, they could have done that. There was already a preliminary injunction in place which gave the horse back and gave physical possession of the horse back to Tattersalls. Oh, I didn't realize that. And permitted it to be sold at that point? Did not permit it to be sold at that point. However. What's the difference? The difference is the district court recognized that there's more than one way to provide this evidence. You don't have to sell the horse in order to provide the appropriate evidence. But clearly the sale is the best evidence, right? The sale may not be the best evidence. Expert testimony may be the best evidence. And the court even recognized in a footnote to its November 22nd order that a sale can be manipulated. There was a concern by the court that a sale may not occur in a timely fashion, that a sale may not represent a fair market value, and that expert testimony of the depreciation value might be the same or better than the other evidence. So, no, I don't think that the sale is the only way to present this evidence.  Let me ask you this. Is there any procedure under state law that would permit the immediate sale of the animal pendently? In other words, prior to the entry of final judgment? Now, there was an interlocutory order that allowed the seizure and the plaintiff essentially being given custody of the asset pending the litigation. But was there something else in state law that said where it's an asset that may diminish in value, the plaintiff as custodian may sell it and deposit the asset to the court? I'm not aware of that, but that's also not something that Tattersall has requested, which they could have done. And I don't think that DeHaven would have objected to, to allow the sale of the horse where in this situation there is an understanding that the horse was not paid for, for whatever reason, and that was an error that could have been litigated but wasn't because there was a default. And that they could have sold the horse and that the Tattersalls could have moved the court to do that. There are any number of things the court could have done here where Tattersalls could have requested but didn't, which is why we believe that this falls under the Fifth Circuit's ruling in Trahan, where when the court exercises a reasoned judgment, and simply because the outcome of that reasoned judgment doesn't come out the way the court wanted, in this case it didn't come out the way the court wanted because Tattersalls was not able to provide either the sale of the horse or the expert testimony in the time permitted, that the fact that there is a diminished value of the judgment doesn't change under Rule 68. That is not a Rule 68 error. And I see that I have to go. Kennedy. And save the rest of your time for rebuttal? Exactly. You may. Thank you, Your Honor. Before we start the clock, let me ask the counsel for the appellees if there's an agreement that one party's person is going to argue, they're going to divide the time, and if so, how? I'm not going to argue. Mr. Kelly is standing next to me in case I have a menopause moment. But you'll be doing the argument. You'll be presenting the entire argument on behalf of the appellees. I won't be presenting the argument unless, yes, unless I get some. Okay. With that, we can proceed. Thank you. Thank you. If it pleases the Court, Diana Cortot on behalf of Tattersalls Limited. With all due respect, Your Honors, I think the Court is actually more familiar with this than perhaps we are, which is that, you know, the cases in the Ninth Circuit are clear with respect to original intention of the district court. Garamendi seems to be right on point. It talks about the importance of the fidelity to the intent behind the original judgment. And if I'm going into areas the Court doesn't need to hear, please let me know. The Court was very specific that under 60A, the court's original intention governs and can make a judgment to reflect the actual intentions of the court plus all the necessary implications. And I think it's also important, Your Honors, with respect to INRI G, which is the fact that the Court can take into account all the circumstances and the entire record as to what was occurring. And Garamendi is so on point because, you know, Garamendi talks about, you know, the similar situation, which was they wanted to allow the explanation so that the district court could enforce the judgment in France. And, you know, we had the issue of trying to get back that horse. I was on the case that entire time. And the Jockey Club in Del Mar was preventing it. They were not acknowledging that Tattersall was the owner. So we could not get our hands on the horse to get it to auction. And from the beginning, I did know that you could get an expert declaration, but I said from the beginning, the best evidence of depreciation, the best evidence of the damages and making Tattersall's whole would be to get the horse to auction so that we could establish. Ginsburg. Let me understand. So your position, I guess the question is why didn't or couldn't you get an expert declaration of evaluation earlier within the time limit? Well, I had two concerns. I thought the best evidence, you know, I've been doing this a little bit for a while, and I always think that experts, you can always get an expert to say something. And so I didn't think it was the best evidence of damages, frankly. I thought the best evidence was, in fact, the option because that would be the best evidence. And the second concern I had was that was the key years of that thoroughbred, the key year that he had it. And I thought an expert is not going to be as reliable as or an expert is going to be a lot more credible if the expert actually sees the horse. So how does an expert give a very credible declaration without actually seeing the horse? And that was the problem we had from the beginning. But you did get a provisional remedy to seize the horse, right? We were trying to seize the horse. I know we had a lot of difficulty trying to get our ‑‑ But ultimately, the sheriff took constructive possession, and then your client was given actual possession as an agent of the sheriff. Isn't that essentially what happened? Right. I know we went through the sheriff's in San Diego, and then we had to try to get an agent for Tattersall, that is the oldest auction house in England, to get an agent here. And then we were dealing with auctions to be able to sell the thoroughbred horse. So was the delay because you couldn't affect the commercially reasonable sale within the schedule that the court set? Was that the problem? I'm just wondering, once you got the order saying, okay, the horse shall be held away from the defendant, once you get that order, why couldn't you also amplify the order to say, and it shall be sold and the proceeds deposited into court? Well, what I remember, Your Honor, is that there was trying to seize the horse, and we had it with the sheriff, which the sheriff had no familiarity with even seizing a horse. So we were going through a new process with them. Then we were trying to – It's an ironic statement, right? The sheriff doesn't know how to seize a horse. I didn't either. It's the 19th century. And so I can remember – It's Arizona. So then they had it, and we had it in storage, and then we were trying to get it to the agent, and the agent was, if I'm not mistaken, Florida for the auction house. And so to be able to get it to auction, and there was only – there were only so many auctions, I want to say a couple times a year, but it's not – you know, it's not like these auctions were happening every day to auction off these thoroughbred race horses. And so there was a number of difficulties that really prevented and made it impossible. In any event, it seems to me the error was the obtaining of a final judgment when the case wasn't ready for final judgment. I agree. I think the – well, I think I agree that the – had the judge held off on the judgment. The judge wanted to enter the judgment? You didn't ask for it? I don't know if that was the case. I think that what happened is the judge made it clear under all these Ninth Circuit cases that his intent was always to include depreciation. And I think from the beginning his intent was clear on depreciation being included as a measure of damages, and he even went into the rationale for that. He even gave us the options. And he knew what we were up against with respect to the facts and all the record and the circumstances, which is why I always compare it to Garamendi, because he had the same thing with the default, a failure to rebut evidence. There were just a number of things along the way that showed that the record as a whole, that the judge was trying to comport with his intention, and we were all trying to comport with his intention to allow damages to be – to be made to the horse and get it sold. And getting the horse made available and get that horse sold so that we would know exact damages, Your Honor. Is there anything else I might add? And I think the Court knows that subsequent statements can be considered as well of the judge, but I don't think there's any dispute that the judge intended the depreciation from the beginning. Thank you, Your Honor. Thank you. Thank you. Very briefly, Your Honor, I'd like to focus on the district court's original intent, which again we concede was to award depreciation, provided that Tattersalls gave either the sale of the horse or expert evidence in a given time. And that's both in the September 30th order and the November 22nd order. I'd also like to say Courts set lots of time periods and courts often extend those time periods. Why is no extension possible here? Because this would have been a substantive amendment which is governed by Rule 59e. This is not a clerical amendment. The Court understood that substantive evidence had to be presented. And that's why I think that this is not the same situation as Garamendi. So are you saying there's no way that this could have been, the Court could have done what it wanted to do? In this situation, I think the only way the Court could have done what it wanted to do is at the time not enter final judgment and put it off. But that's not what the Court chose to do. Here with Garamendi, I'm sorry, I'm out of time. Thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Cogan, Schroeder, Clifton